UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JOSHUA DAVEN BOLLES,                                                   Case No. 17-11788-t7

    Debtor.

EMILY NELSON,

    Plaintiff,

v.                                                                                                                Adv. No. 17-01077-t

JOSHUA DAVEN BOLLES,

    Defendant.

## **OPINION**

Before the Court is Plaintiff's claim for damages because Defendant gave her herpes, and for a declaration that the debt is nondischargeable under § 523(a)(2)(A) and (a)(6). Defendant counters that he lacked the requisite state of mind for any debt to be nondischargeable. After conducting a trial on the merits and hearing argument, the Court finds that Defendant is liable to Plaintiff for fraud and civil battery and that the debt is nondischargeable under § 523(a)(6).

I.     FACTS

The Court finds:[1]

Plaintiff is a 40-year old registered nurse. Originally from South Dakota, she moved to New Mexico in 2009 and lived here until 2016. Plaintiff had a job as a surgical nurse at

---

[1] In making its findings, the Court took judicial notice of the docket in Defendants' main bankruptcy case and in this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Presbyterian Hospital in Albuquerque. She is well educated, intelligent, and of good moral character. Physical health and well-being have always been very important to her. She has never been married. The Court finds that Plaintiff was a credible and truthful witness.

Defendant is a 44-year old software analyst, employed by Northrop Grumman. He is educated, intelligent, and articulate. He has been married twice and has children from both marriages. For the most part, his trial testimony was credible. In certain areas, however, the Court finds that his testimony was not credible. In addition, as set forth below, the Court finds that Defendant lied to Plaintiff at crucial times.

Plaintiff met Defendant online using a phone application called "Tinder" in October or November 2015. They began communicating by Tinder and Facebook. At some point Plaintiff decided to trust Defendant enough to give him her cell number.

Plaintiff and Defendant had their first date in December 2015, when Defendant invited Plaintiff to dinner at a local restaurant. Over the holidays, the parties kept in frequent contact. While Plaintiff was out of town, Defendant expressed that he "[couldn't] wait to have [Plaintiff] home."

Plaintiff was very cautious dating people she met through dating applications. Defendant was the only person who "passed every test." On December 31, 2015, Plaintiff went to Defendant's house for dinner. That evening, Defendant, in a seeming act of openness, told her that his ex-wife had obtained two restraining orders against him, prompted by threatening text messages he had recently sent. Plaintiff took this disclosure as a measure of Defendant's honesty. After spending a few hours together drinking wine and talking, the parties had their first sexual encounter. Beforehand, Plaintiff asked the Defendant, "Do you have anything I need to worry about?" Defendant understood this question (correctly) as asking whether he had any sexually transmittable

diseases. He said he did not, and reassured Plaintiff by reminding her that he had been married for ten years. Plaintiff recalls that Defendant said, "oh gosh no," or something similar, in response to her question.

In fact, Defendant had genital herpes,[2] an incurable, sexually transmitted disease. Defendant contracted herpes in about March 2004, while he was single. At that time, Defendant suspected that he contracted the disease. He suffered an outbreak in 2014, went to the doctor, and received a positive diagnosis on January 8, 2014. The written lab report confirming the diagnosis is part of the trial evidence.

Thus, Defendant lied when he answered, "oh gosh no." Defendant knew herpes was easily transmitted by unprotected sexual intercourse. Defendant lied because he knew if he told the truth, Plaintiff would not have sex with him.

Plaintiff believed Defendant's "oh gosh no" answer. Her belief was reasonable, given Defendant's candor about the restraining orders and all their prior communications and activities. Based on her reasonable assessment that Defendant told her the truth, Plaintiff agreed to have unprotected sex.

Over the next several weeks, the parties spent more time together. Defendant watched football games at Plaintiff's house, and during the week the they saw each other. Defendant introduced Plaintiff to his daughter, who lived with him part of the time. They went on several hikes together. When they were alone, Plaintiff and Defendant had unprotected sex several more times.

Defendant testified that during the times he was with Plaintiff, he was almost always intoxicated, allegedly because he was so upset about his recent divorce and other matters.

---

[2] The official name is herpes simplex virus type II or HSV-II.

Defendant also testified that Plaintiff was often intoxicated when they were together. Plaintiff disputed Defendant's version of their time together. She admitted to some beer and wine drinking but described it as moderate. She also testified that they spent a substantial amount of time together without any alcohol consumption. The Court finds that Plaintiff's version of event is credible, and that Defendant's testimony of constant inebriation is not credible.

In February 2016, while Plaintiff was in Denver for a concert, she began to feel very ill. She experienced flu-like symptoms and developed bloody genital lesions. Urination was painful. She went to the doctor in Albuquerque as soon as she got back to town and tested positive for herpes.[3] Plaintiff was distraught. She told Defendant about her diagnosis. Defendant responded with shock, concern, and apparent disbelief. Then, instead of confessing, Defendant told Plaintiff that he must have contracted herpes from his ex-wife. Again, this statement was false and Defendant knew it.

Plaintiff continued seeing Defendant, thinking they had a common bond of a medical affliction that was not of their doing. However, after a dinner at a local restaurant a month or two after her diagnosis, Plaintiff reproached Defendant's ex-wife for giving them both herpes. In response, Defendant admitted that he, not his ex-wife, was to blame. He also admitted that he knew about his condition before they slept together for the first time. Plaintiff immediately terminated the relationship.

Defendant was Plaintiff's only sex partner from October 2015 until the time of her diagnosis.. The Court finds that there is no doubt that Plaintiff contracted herpes from Defendant.

---

[3] The cost of the doctor visit was $600.

After her diagnosis, Plaintiff suffered serious pain and distress from herpes outbreaks. Outbreaks can be lessened with treatment by Valacyclovir, an oral medication. The treatment cost is $150 per month. Plaintiff will have to take the medication for the rest of her life.

Herpes outbreaks can be triggered by stress. After her diagnosis, Plaintiff was offered a higher paying but more stressful job as an operating room manager. She ultimately decided not to take the job, and in fact to relocate to California, in part because of her fear that the stress attendant to being an operating room manager would trigger herpes outbreaks.[4]

Plaintiff was and continues to be distraught about contracting herpes. In addition to the physical pain and suffering, she sees herself as a pariah, permanently unable to date, marry, or have children. Plaintiff has paid for psychological counsel to help her deal with the situation. To date, the counseling costs have totaled $9,672 ($1,000 for on-line counseling and $8,672 for eight months of in-person counseling). She currently is paying $135 a week for counseling and estimated that it will need to continue for a year.

Plaintiff filed a state court action against Defendant in July 2016. On July 12, 2017, before the action could be tried, Defendant filed this bankruptcy case. Plaintiff brought this adversary proceeding on October 6, 2017.

## II. DISCUSSION

A. Plaintiff's Claims.

Plaintiff alleges that Defendant committed six torts: negligence; fraud; negligent misrepresentation; negligent infliction of emotional distress; intentional infliction of emotional distress; and civil battery. The Court will address each claim.

---

[4] Plaintiff did not ask for compensatory damages for turning down the higher paying job,

1. <u>Negligence</u>. Under New Mexico law, a negligence claim "requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *In re Otero County Hospital Assoc., Inc.*, 2016 WL 7985365 at *12 (D.N.M.) (citing *Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48 (S. Ct. 2003)). *See also Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1249 (S. Ct. 2014) (same). An intentional act may not be the basis for a negligence claim:

> "The term 'negligence' is ordinarily used to express … civil liability for an injury to a person…that is not the result of premeditation or formed intention. Intent and negligence are mutually exclusive; one cannot intend to injure someone by negligent conduct….The distinguishing factor between intentional tortious conduct and negligent conduct is that the intentional actor has the desire to bring about the consequences that follow or the substantial certainty that they will occur[.]

57A Am. Jur. 2d Negligence §30. *See also Waters v. Blackshear*, 412 Mass. 589, 591 (1992) ("We start with the established principle that intentional conduct cannot be negligent conduct and that negligent conduct cannot be intentional conduct."); *State v. Asfoor*, 75 Wis. 2d 411, 429 (1977) ("intent and negligence are mutually exclusive and one cannot intend to injure someone by negligent conduct."); 57A Am. Jur. 2d Negligence §218 ("Negligence and intentional misconduct are contradictory terms – they differ in kind rather than degree.").

As explained below, Defendant's conduct was intentional. Thus, Plaintiff's negligence claim fails.

2. <u>Fraud</u>.[5] In New Mexico, a common law fraud claim has five elements:

---

[5] Plaintiff includes a claim for "intentional misrepresentation" with her negligent misrepresentation claim. The Court concludes that there is no difference between a fraud claim and an intentional misrepresentation claim. *See* Uniform Jury Instruction 13-1633 (NMRA 2001) (elements of a fraudulent misrepresentation claim); *Unser v. Unser*, 86 N.M. 648, 653–54 (S. Ct. 1974) (elements of common law fraud); The Court will treat the claims as one for common law fraud.

-6-

> An actionable fraud is a misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive and to induce the other party to act upon it with the other party relying upon it to his injury or detriment.

*Unser v. Unser*, 86 N.M. 648, 653–54 (S. Ct. 1974). *See also*, *Williams v. Stewart*, 137 N.M. 420, 429 (Ct. App. 2005) (citing *Unser*). The elements must be proven by clear and convincing evidence. *Tomlinson v. Burkett,* 2018 WL 3868704, at *6 (Ct. App.) (unpublished).

Here, Defendant intentionally misrepresented his physical condition. When Plaintiff asked if there was "anything [she] needed to worry about," Defendant said "oh gosh no." Nothing could have been further from the truth, as Defendant knew full well.

Defendant lied to Plaintiff to induce her to have sex with him. Defendant knew that Plaintiff would not agree to have sex if she knew the truth. Defendant's conduct, knowledge, and intent clearly constitute the requisite misrepresentation of a fact with intent to deceive and induce Plaintiff to act.

Plaintiff relied on the Defendant's statement. She did so in part because of a false sense of trust engendered by Defendant's openness about the recent restraining orders. Given Defendant's apparent candor about his legal trouble and the months of previous communication, Plaintiff thought she could trust Defendant not to lie about his health. Her reliance was reasonable. Sadly, it also was misplaced; she now has an incurable STD.

The Court finds that all the elements of fraud were proven by clear and convincing evidence.

3.  <u>Negligent Misrepresentation</u>. Negligent misrepresentation is a separate action from fraud or deceit. *Maxey v. Quintana*, 84 N.M. 38, 42 (Ct. App. 1972). "To state a negligent misrepresentation claim, Plaintiff must show that 'the offending party must have breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the

misinformation, and it must have sustained damages.'" *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 4148434, at *4 (D.N.M.) (citing *Ruiz v. Garcia*, 115 N.M. 269, 274–75 (S. Ct. 2017). An intentional fraud cannot be a negligent misrepresentation. *See Ledbetter v. Webb*, 103 N.M. 597, 603 (S. Ct. 1985) ("where plaintiffs' conduct is found to be intentionally fraudulent or misleading . . . it is error to conclude that the same conduct also amounts to negligent misrepresentation."). Elsewhere the *Ledbetter* court stated that "Negligent misrepresentation is not, of course, a "lesser included" cause of action with a claim for deceit or fraud." *Id.* at 602. *See also City of Raton v. Arkansas River Power Authority*, 600 F. Supp. 2d 1130, 1149 (D.N.M 2008) (an action for negligent misrepresentation differs from the tort of deceit because the former is based on negligence while latter involves the intent to mislead).

Because Defendant committed an intentional fraud, Plaintiff's claim for negligent misrepresentation fails.

4. <u>Negligent Infliction of Emotional Distress ("NIEF")</u>. "NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Baldonado v. El Paso Nat. Gas Co.*, 143 N.M. 297, 304–05 (Ct. App. 2006), *aff'd*, 143 N.M. 288 (2008). NIED is "a tort against the integrity of the family unit." *Ramirez v. Armstrong,* 100 N.M. 538, 541 (S. Ct. 1983), *overruled on other grounds, Folz v. State,* 110 N.M. 457, 460 (S. Ct. 1990). A defendant cannot be liable for the tort unless the witness-plaintiff has a close marital or family relationship with the victim. *Id.* NIED has no application to this case.

5. <u>Intentional Infliction of Emotional Distress ("IIED")</u>. The tort of intentional infliction of emotional distress has the following elements:

> (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's

-8-

mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.

*Baldonado v. El Paso Nat. Gas Co.*, 143 N.M. at 297. These elements are based on the Restatement (Second) of Torts § 46 (1965). *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 131 N.M. 607, 616 (S. Ct. 2001) ("[O]ur courts have adopted the approach used in the Restatement (Second) of Torts § 46 (1965).").

The Restatement requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Section 46, cmt. d; *see also* UJI 13–1628 NMRA 2001 ("Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person."). "The 'outrageous conduct' requirement is a high standard that our courts have consistently regarded as a significant limitation on recovery." *Schueller v. Schultz*, 2016 WL 2853876, at *2 (N.M. App.) (unpublished).

Conduct that satisfies the "extreme and outrageous" requirement is rare. The Court concludes that Defendant's conduct does not satisfy New Mexico's high requirements for the intentional infliction of emotional distress. The IIED claim therefore fails.

6.  <u>Civil Battery</u>. In New Mexico, "the elements of civil and criminal assault and battery are essentially identical." *New Mexico v. Ortega*, 113 N.M. 437, 440 (Ct. App. 1992); *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1048 (D.N.M. 2015). A tortfeasor is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *Greffet*, 108 F. Supp. 3d at 1048; *Ortega*, 113 N.M. at 440. *See also* N.M. Stat. Ann. § 30–3–4 ("Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.").

The "intent to cause a harmful or offensive contact" element is ambiguous. The *Restatement Second of Torts* defines intent to mean either an intent to touch or an intent to cause harm or offense. *Greffet*, 108 F. Supp. 3d at 1048. Under either definition, an unconsented touching is sufficient. *Id.* ("It is clear, however, that an intent to touch in a way that the defendant understands is not consented to is sufficient, as is an actual intent to harm.").

"[O]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." *Restatement (Second) of Torts* § 892A (1979). Consent is ineffective to bar a claim of battery, however, if it is induced by misrepresentation or mistaken belief. *See* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts*, § 111 (2d ed.), Mistake or Misrepresentation Negating Consent. "[I]f the defendant knows of the plaintiff's mistake or has induced it by a misrepresentation, he becomes liable for a battery." *Id.*

Here, Defendant lied to Plaintiff about having herpes to induce Plaintiff to have sex. Plaintiff's consent, which was based on the lie, was ineffective.

Given the lack of valid consent to the touching, Defendant had the requisite intent to batter under either theory of battery intent outlined above. When Plaintiff had unprotected sex under the mistaken belief that Defendant was disease-free, an offensive contact occurred. Plaintiff satisfied the elements for a claim of civil battery.[6]

---

[6] For cases holding that a plaintiff can sue for battery when she consented to sexual relations in the mistaken belief that the defendant is free of infection, see *Kathleen K. v. Robert B.*, 150 Cal. App. 3d 992, 997 (1984) (defendant said he was disease-free, when he had herpes); *Hogan v. Tavzel*, 660 So. 2d 350 (Fla. App. 1995) (genital warts not revealed); *Crowell v. Crowell*, 180 N.C. 516 (1920) (it was a battery for husband to have sex with his wife without telling her that he had a "foul and loathsome disease"); *Johnson v. Jones*, 269 Or. App. 12 (2015) (2015) (failure to disclose herpes before sexual intercourse is grounds for civil battery). *See also Barbara A. v. John G.*, 145 Cal. App. 3d 369 (1983) (grounds for battery when man tells falsely a woman that he can't get anyone pregnant).

-10-

B. Damages

Having found Defendant liable to Plaintiff for fraud and civil battery, the Court will assess damages.

1. Compensatory Damages. Plaintiff is entitled to her medical costs, including past and projected future costs. Such costs include doctor visits, medication, and psychological counseling. These costs are summarized as follows:

| | |
|---|---|
| Doctor visit: | $ 600 |
| Valacyclovir for 40 years (40 years x 12 months per year x $150 per month), discounted to present value at 5%: | $31,900 |
| Initial therapy: | $ 9,672 |
| Additional therapy for one year @ $135 a week: | $ 7,020 |
| Total: | $49,192 |

The Court awards medical compensatory damages of $49,192.

Plaintiff is also entitled to damages for her pain and suffering. "It is not disputed that under New Mexico law damages can be recovered for mental pain and suffering as a consequence of physical injuries." *Rutledge v. Johnson*, 81 N.M. 217 (S. Ct. 1970). Damages for pain and suffering are part of compensatory damages. *Alber v. Nolle*, 98 N.M. 100, 106 (Ct. App. 1982); *see also* NMRA, Civ. UJI 13–1807 (damages are recoverable for "[t]he pain and suffering experienced [and reasonably certain to be experienced in the future] as a result of the injury."). There is no fixed standard for determining pain and suffering damages. *In re Otero Cty. Hosp. Ass'n, Inc.*, 2018 WL 893789, at *23 (Bankr. D.N.M.). The Court must exercise its judgment to determine the appropriate award. *Id.* Based on the evidence, the Court finds that the Plaintiff is entitled to $147,576 for pain and suffering (three times her medical expenses).

2. Punitive Damages. Based on record, and discussed further below, the Court finds Defendant's actions were willful and malicious. The Court believes that an award of punitive damages is appropriate. *See Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1211 (D.N.M.

-11-

2007) ("To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level.") (citing *Eckhardt v. Charter Hospital of Albuquerque, Inc.*, 124 N.M. 549, 562 (Ct. App. 1997). The Court finds that a punitive damage award of $50,000 is appropriate.

  3. <u>Total Damages</u>. Together, compensatory and punitive damages total $246,768.

C. <u>Nondischargability</u>.

Plaintiff established claims for fraud and civil battery, with total damages of $246,768. The next question is whether the debt is dischargeable in this chapter 7 case. The Court concludes that debt is dischargeable under §523(a)(2)(A) but is nondischargeable under §523(a)(6).

  1. <u>§ 523(a)(2)(A)</u>. Section 523(a)(2)(A) excepts from discharge any debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." In *In re Rountree*, 330 B.R. 166, 171 (E.D. Va. 2004), *aff'd*, 478 F.3d 215 (4th Cir. 2007), the court stated:

> The determination of whether a debt is excepted from discharge under this category depends upon whether money, property or services, or an extension, renewal or refinancing of credit has been obtained, the character of the property, services or extension, renewal or refinancing of credit, and the character of the false pretenses or representation or actual fraud.
> ... For a debt to fall within this exception, money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud. The purposes of the provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. Before the exception applies, the debtor's fraud must result in a loss of property to the creditor.

330 B.R. at 171 (citing Collier on Bankruptcy ¶ 523.08[1][a], [b], [d] (15th ed.)).

Thus, even though Defendant defrauded Plaintiff, he did so to obtain sex rather than money, property, services, or credit. The fraud claim therefore falls outside the bounds of § 523(a)(2)(A).

-12-

2. § 523(a)(6). Section 523(a)(6) excepts from discharge any debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." To prevail under § 523(a)(6) a creditor must prove: (1) either he or his property sustained an injury; (2) the injury was caused by the debtor; (3) the debtor's actions were "willful;" and (4) the debtor's actions were "malicious." *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012). *See also Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (debtor's actions that caused the injury must be both willful and malicious). To be willful, a debtor must have intended both the act and the resulting harm. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."). The required intent includes the belief that the injury is "substantially certain to result." *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000) (quoting *Kawaauhau v. Geiger*, 113 F.3d 848, 852 (8th Cir. 1997), affirmed, 523 U.S. 57).

The Tenth Circuit follows a subjective standard in determining whether a defendant injured a plaintiff willfully. *Englehart*, 2000 WL 1275614, at *3 (the "'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). *See also In re Cain*, 2014 WL 5852152, at *3 (D. Colo.) (quoting *Englehart*); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999) (intent means that the actor desires to cause consequences of his act or believes the consequences are substantially certain to result from it).

For a debtor's actions to be malicious, it must be intentional, wrongful, and done without justification or excuse. *Deerman*, 482 B.R. at 369 (citing *Bombardier Capital, Inc. v. Tinkler*, 311

-13-

B.R. 869, 880 (Bankr. D. Colo. 2004)).[7] *See also Saturn Systems, Inc. v. Militare (In re Militare)*, 2011 WL 4625024, *3 (Bankr. D. Colo.) (a "wrongful act, done intentionally, without just cause or excuse"); *Tso v. Nevarez (In re Nevarez)*, 415 B.R. 540, 544 (Bankr. D.N.M. 2009) (without justification or excuse); *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr. D. Utah 1999) (without justification or excuse).

      a.    <u>Battery</u>. The Court finds that Defendant injured Plaintiff willfully. Defendant did not intend to give Plaintiff herpes. He knew, however, that herpes was readily transmitted by unprotected sex. Despite this knowledge, Defendant chose to put Plaintiff squarely in harm's way. The almost immediate result was that Plaintiff contracted herpes. The Court finds that Defendant knew Plaintiff's injury was substantially certain to occur. His conduct therefore was willful.

The Court also finds that Defendant injured Plaintiff maliciously. Defendant's actions were wrongful and had no justification or excuse. The Court can think of no situation in which one partner can rightfully, justifiably, or excusably lie to another about not having an incurable STD. Defendant's actions were contemptible and malicious.

Defendant battered Plaintiff willfully and maliciously. The resulting damages are nondischargeable under § 523(a)(6).

      b.    <u>Fraud</u>. There is no binding precedent whether Plaintiff's fraud claim is nondischargeable under § 523(a)(6). Some courts have held that fraud claims can never come within § 523(a)(6). For example, in *In re Jahelka*, 442 B.R. 663 (Bankr. N.D. Ill. 2010), , the court found that "Sections 523(a)(2) and (a)(6) are mutually exclusive. Debts resulting from fraud are

---

[7] *Tinkler* got the "wrongful act, done intentionally, without just cause or excuse" language from *Tinker v. Colwell,* 193 U.S. 473, 486 (1904).

-14-

therefore nondischargeable under section 523(a)(2) or not at all." *Id.* at 671–72. *See also S & T Bank v. Howard (In re Howard)*, 2009 WL 4544392, at *6 (Bankr. S.D.N.Y.); *Starkey v. Krueger (In re Krueger)*, 2000 WL 33792711, at *8 (Bankr. D.N.D.); *McCrary v. Barrack (In re Barrack)*, 201 B.R. 985, 989–93 (Bankr. S.D. Cal. 1996), *rev'd on other grounds,* 217 B.R. 598 (9th Cir. BAP 1998); *Old Kent Bank–Chicago v. Price (In re Price)*, 123 B.R. 42, 45 (Bankr. N.D. Ill. 1991).

On the other hand, language from two Supreme Court cases suggest that fraud claims may sometimes fall within § 523(a)(6). In *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016), the Supreme Court stated:

> Just as a fiduciary who engages in a fraudulent conveyance may find his debt exempted from discharge under either § 523(a)(2)(A) or § 523(a)(4), so too would a fiduciary who engages in one of the fraudulent misrepresentations that form the core of Ritz' preferred interpretation of § 523(a)(2)(A). The same is true for § 523(a)(6). The debtors who commit fraudulent conveyances *and* the debtors who make false representations under § 523(a)(2)(A) could likewise also inflict "willful and malicious injury" under § 523(a)(6). There is, in short, overlap, but that overlap appears inevitable.

*Id.* at 1588. (emphasis in original). The Supreme Court continued:

> [O]ur interpretation of "actual fraud" in § 523(a)(2)(A) also preserves meaningful distinctions between that provision and §§ 523(a)(4), (a)(6)…. § 523(a)(6) covers debts "for willful and malicious injury," whether or not that injury is the result of fraud, whereas § 523(a)(2)(A) covers only fraudulent acts. Nothing in our interpretation alters that distinction either.

*Id.* (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

Further, in *Grogan v. Garner*, 498 U.S. 279 (1991) the Supreme Court said:

> Arguably, fraud judgments in cases in which the defendant did not obtain money, property, or services from the plaintiffs and those judgments that include punitive damages awards are more appropriately governed by § 523(a)(6). See 11 U.S.C. § 523(a)(6) (excepting from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity") . . . .

498 U.S. at 282, n. 2 (citations omitted).

-15-

The Court concludes that claims for money, property, services, or extension of credit obtained by fraud are governed by § 523(a)(2)(A), while claims for injury to persons or property caused by fraud are governed by § 523(a)(6). *Compare In re Rountree*, 330 B.R. at 171 (§ 523(a)(2)(A) only applies to claims for money, property, etc. obtained by fraud, not to personal injury tort claims). Therefore, if Defendant's fraudulent conduct constituted willful and malicious injury to Plaintiff, the resulting damages would be nondischargeable under § 523(a)(6).

For the same reasons outlined in the battery nondischargeability analysis, the Court finds that Defendant, by his fraud, injured Plaintiff willfully and maliciously. The damages caused to Plaintiff by Defendant's fraud are nondischargeable under § 523(a)(6).

### III. CONCLUSION

Defendant is liable to Plaintiff for damages caused by Defendant's fraud and civil battery. The Court awards total damages of $246,768. This debt is nondischargeable under §523(a)(6). The Court will enter a separate judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 27, 2018

Copies to: counsel of record

>Joshua D. Bolles
>6700 Esther Ave. NE
>Albuquerque, NM 87109

-16-

Case 17-01077-t    Doc 52    Filed 11/27/18    Entered 11/27/18 16:06:31 Page 16 of 16